IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| BRANDON TERRACE MILTON, <br>    *#452741*, *SID #2877936*, <br><br> Plaintiff <br><br> v. <br><br> W.C.I., <br> RICHARD GRAHAM, JR., *Warden*, <br> RONALD WEBBER, *Warden*, <br> BRADLEY BUTLER, *Chief of Security*, <br><br> Defendants | * <br><br> * <br><br> * <br><br> *       Civil Action No. CCB-19-2939 <br><br> * <br><br> * <br><br> * <br><br> * |

***

## **MEMORANDUM OPINION**

Self-represented plaintiff Brandon Terrace Milton, currently incarcerated at the Maryland Correctional Institution in Jessup, Maryland, brought this civil action pursuant to 42 U.S.C. § 1983 against Western Correctional Institution ("WCI"), former WCI Warden Richard Graham, Jr., Acting WCI Warden Ronald Webber, and WCI Chief of Security Bradley Butler. ECF No. 1; ECF No. 4. In his Complaint, Milton asserts that the defendants failed to protect him from harm while he was housed at WCI. ECF No. 1 at 2–4. He seeks monetary damages. *Id.* at 4.

On February 20, 2020, the defendants filed a Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment. ECF No. 15. On March 18, 2020, Milton filed correspondence, which the court construes as a response opposing the motion. ECF No. 17.

A hearing is not necessary. *See* Local Rule 105.6 (D. Md. 2018). For the reasons explained below, the court will grant the defendants' motion.

### Background

Milton claims that on July 20, 2019, while he was incarcerated at WCI, a maximum security inmate struck him in the face as he was headed from the day room to the showers.

Complaint at 2, ECF No. 1.  Milton saw a knife in the inmate's hand and realized that he had been stabbed.  *Id.*  Milton claims that for three months prior to the incident, he had been asking the defendants to move him from the tier "because it wasn't the type of atmosphere that [he] should have been in."  *Id.* at 3.  According to Milton, he was a medium security inmate housed among "violent maximum security inmates."  *Id.*

The defendants state that at approximately 10:26 p.m. on July 20, 2019, inmates were being released from the A-Tier lower dayroom when Milton advised that he had just been stabbed.  Decl. of Britt Brengle at 7, ECF No. 15-5.  Milton was escorted to the Medical Department, where he was found to have "a stab wound to the right side of his face directly anterior to his ear approximately 3cm by 2cm with significant depth."  Decl. of Michael Yates at 30, ECF No. 15-3.  Milton was then transported to Western Maryland Regional Medical Center, where he was treated with three sutures.  Medical Records at 2, ECF No. 15-4.

Milton identified his assailant as inmate James Starcher.  ECF No. 15-3 at 30.  WCI staff reviewed video surveillance and confirmed that Starcher was following Milton towards the rec hall bathroom where the assault took place.  *Id.*  During an Intelligence & Investigative Division ("IID") interview on August 16, 2019, Milton reported that the incident started earlier in the day when Starcher asked to borrow $5 for commissary and Milton refused.  ECF No. 15-5 at 7.  The IID investigation was closed after Milton declined to pursue the matter any further.  *Id.* at 7–8.

According to the defendants, Milton has one documented submission of an inmate request regarding his housing, which he submitted to defendants on April 23, 2019.  Decl. of Kareen A. Wallace at 2 (Inmate Request), ECF No. 15-6.  In the request, Milton asked to be moved to Housing Unit 1 or 2 "because of the fact that [he is] in a bad environment dealing with the gang issue."  *Id.*  On April 26, 2019, Milton was advised to write to the manager of the

2

housing unit where he wanted to move. *Id.* at 4.

While housed at WCI, Milton submitted two Administrative Remedy Procedure ("ARP") requests, both of which were unrelated to the stabbing incident. ECF No. 15-3 at 41. In the first one, dated September 3, 2019, Milton claimed that he was missing an Xbox console, controller, and three games. *Id.* at 42. In the second ARP request, dated October 2, 2019, Milton complained that his cellmate was showing signs of mental illness. *See id.* at 41. The Inmate Grievance Office ("IGO") has not received any complaints or grievances from Milton regarding the defendants' alleged failure to protect him from inmate violence on July 20, 2019. Decl. of Samiyah Hassan, ECF No. 15-9.

In Milton's response to the defendants' motion, he states that on October 19, 2017, he submitted an earlier request to be moved to Building 1, A-tier. Response, ECF No. 17. In support of his request, Milton stated that he had been at the facility for 10 months without any tickets and he wanted to "change [his] entire surroundings." ECF No. 17-1. On October 24, 2017, Milton's request was denied with the following explanation: "You must have a job to be housed here. Reapply for housing when you get one." *Id.*

**Standards of Review**

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).

3

Rule 56(a) provides that summary judgment should be granted "if the movant shows that there is no *genuine* dispute as to any *material* fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphases added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]" *Anderson*, 477 U.S. at 247–48 (emphasis in original). The court must view the evidence in the light most favorable to the nonmoving party, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014) (per curiam) (citation and quotation omitted), and draw all reasonable inferences in that party's favor, *Scott v. Harris*, 550 U.S. 372, 378 (2007) (citations omitted); *see also Jacobs v. NC. Admin. Office of the Courts*, 780 F.3d 562, 568–69 (4th Cir. 2015). At the same time, the court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993)).

**Analysis**

**I.    Defendant WCI**

Section 1983 provides that a plaintiff may file suit against any person who, acting under color of state law, "subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. Section 1983,

however, "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). WCI is not a person within the meaning of 42 U.S.C. § 1983. *See Smith v. Montgomery Cty. Corr. Facility*, Civil Action No. PWG-13-3177, 2014 WL 4094963, at *3 (D. Md. Aug. 18, 2014) (a correctional facility "is an inanimate object that cannot act under color of state law and therefore is not a 'person' subject to suit under Section 1983")[1]; *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) (noting that "[c]laims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit").

## II. Remaining Defendants

The defendants raise the affirmative defense that Milton has failed to exhaust his administrative remedies. Motion at 11–12, ECF No. 15-1. If Milton's claims have not been properly presented through the administrative remedy procedure, they must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. §1997e.

The PLRA provides in pertinent part that:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general

---

[1] Unreported cases are cited for the soundness of their reasoning, not for any precedential value.

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215–16 (2007). Nevertheless, a claim that has not been exhausted may not be considered by this court. *See id.* at 220. In other words, exhaustion is mandatory, and a court usually may not excuse an inmate's failure to exhaust. *Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016).

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the IGO against any DOC official or employee. Md. Code Ann. (2008 Repl. Vol.), Corr. Servs. ("C.S.") § 10-206(a). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process before filing a grievance with the IGO. *See* C.S. § 10-206(b). There is an established administrative remedy procedure process that applies to all Maryland prisons. COMAR 12.02.28.01, *et seq.* Therefore, when the ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

Here, it appears that Milton was aware of the Inmate Grievance Procedure and the process was available to him as he filed grievances regarding other matters. However, nothing in the record suggests that he filed grievances regarding the issue raised here. In addition, he has filed no grievances with the IGO regarding the July 20, 2019 attack.[2] As discussed above, the

---

[2] Although Milton asserts that he internally submitted requests to be housed at a different location on at least two occasions, neither request included facts from which an "inference could be drawn that a substantial risk of serious harm exists," to establish that the prison official involved had "a sufficiently

PLRA requires that inmates exhaust all available remedies.  Because Milton failed to do so, his claims will be dismissed without prejudice.[3]

## Conclusion

The defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment is granted.  Milton's claims are dismissed without prejudice.

A separate Order follows.


|  7/14/20  | /S/ |
|---|---|
| Date | Catherine C. Blake |
|  | United States District Judge |

---

culpable state of mind" amounting to "deliberate indifference to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 834, 837 (1994).  In the October 2017 request, Milton stated only that he had been at the facility for 10 months without any tickets and he wanted to change his surroundings.  In the April 2019 request, he claimed that he was in a bad environment dealing with a gang issue but did not provide specific allegations.  In any event, WCI staff directed him to write to the manager of the housing unit he intended to move to, and it does not appear that Milton did so.

[3] In light of this ruling, the court need not address the defendants' remaining arguments.